

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 05-30090 |
| Plaintiff, | * | |
| -vs- | * | ORDER AND OPINION |
| SOSAEOLEISAH C. REFERT, A/K/A SOSAEOLEISAH C. BLUESPRUCE, A/K/A LEISAH BLUESPRUCE, A/K/A LISA REFERT, | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The defendant was convicted by a jury of all counts under a five count indictment. The first count is commonly referred to as health care fraud. The remaining four counts charged the defendant with making false claims against the government. The defendant is an attorney admitted to practice before the state and federal courts of South Dakota. The claims before the jury involved questions as to whether or not the defendant is an Indian with enrollment in a federally recognized tribe. She claimed she qualified. The government claimed that she did not qualify and that she knew of her lack of eligibility for Indian Health Service ("IHS") benefits.

She claimed at trial to be an enrolled member of the Northern Cheyenne Indian Tribe ("Cheyenne"). A Cheyenne official who had searched all enrollments of that tribe testified that neither the defendant nor anyone else named Refert, Bluespruce, Blue Earth, or Blueearth has ever been on the tribal enrollment rolls. The same official testified that the names shown in the indictment are names that do not sound like any Cheyenne member. The names there are entirely different. The defendant testified and claimed that she had a tribal enrollment card and that she had caused a copy to be mailed to the federal investigator acting on behalf of IHS. It was clear that no such card was ever received by the federal government. Many requests were made to the defendant by the investigator to support her claims. The evidence was sufficient to prove that

nothing was ever produced by the defendant. The defendant claimed to have the original of the tribal enrollment card in her mobile home in Lantry, SD, claiming that she was under so much stress that she could not endure the process of looking for the card. No explanation was given as to why some other person was not enlisted to look for the card. She has known for many years, at least six years I believe, the importance to her of producing the card or other appropriate proof of tribal enrollment. The defendant has had many health problems and was denied IHS benefits after a 60 day warning. The warning should have prompted the defendant or someone on her behalf to locate and produce the documentation claimed by the defendant to exist. The jury could well have concluded that the defendant had no card or any other documentation and that she was not telling the truth.

     The trial testimony of the defendant and her assistant was, very frankly, rather incredible. The defendant, of course, had no obligation to prove anything and the jury was instructed accordingly. She made the decision to testify, however, and was subjected to vigorous cross-examination. She could offer no explanation for many matters, including how she would or could have known that her claimed natural father's name was Bluespruce. Her natural father was not listed on her birth certificate. She was adopted very shortly after her birth by two Caucasians. There was no evidence as to how or when her natural father could or would have known of her adoption, her residence, or the names of her adoptive parents. There was no evidence that her adoptive parents would have had any information about the natural father of the defendant. The testimony of the defendant was simply to the effect that she "just knew" of her natural father, had frequent contacts with him, and knew that his name was Bluespruce. She has claimed a place of birth for her alleged father in more than one location and was unable to explain such inconsistencies.

     When she applied for admission to Seton Hall University Law School, she represented on her application that her race was Native American. Law schools at that time and especially in eastern schools were looking for minority race students. Her indication of race was circled on her application. A motive for claiming to be Native American at that time certainly could have been found by the jury.

2

When she applied for admission to practice law from the South Dakota Supreme Court, she filed a petition claiming to be Sosaeoleisah C. Bluespruce. She was required to supply proof of a court order authorizing a name change from her legal name of Lisa Refert. She was adopted in New Jersey with a given name of Lisa Refert. She stated on the Supreme Court application that she would supply the proof of a change in name. She admitted during the trial that she never did so, although claiming in her testimony that such a court order was entered in Monmouth, NJ. An inquiry to the clerk of that court resulted in information that no change of name proceeding was ever started or completed by the defendant. The defendant may want to attempt to produce such proof of change of name before her sentence hearing.

I was not surprised that the jury did not believe the testimony of the defendant. The evidence against her was overwhelming. I am frankly considering whether to apply points for obstruction of justice.

The defendant was permitted to submit alternate defense claims to the jury. First, she claimed that she was actually Native American, that she had a document or documents to prove it (although not produced during discovery or at trial), and that she had submitted such document or documents to IHS. Second, she claimed that she was "regarded as an Indian" by the community in which she lives. She was allowed to present evidence as to this factual issue which would arise under 42 C.F.R. §136.12. This, of course, is an alternative theory as to why she was qualified to receive IHS benefits. She was allowed to present to the jury the actual C.F.R. section permitting IHS benefits if the patient is "regarded as an Indian" by the community. The evidence was that IHS interprets such rule or regulation as requiring such recognition by the tribe itself, something that has not occurred here. The jury was not instructed that it was required to follow the IHS interpretation. The Cheyenne River Sioux Tribe of South Dakota claims that the defendant was employed as chief tribal judge under false pretenses of being Indian. She was relieved from her position as a result of the Cheyenne River Sioux Tribe finding that she was not an Indian and that she had misled the Tribal Council. The jury obviously found that the defendant was not "regarded as an Indian" by the community and there was clearly sufficient evidence to so find.

The defendant continues to claim that the court should have continued the trial for the fourth time to obtain a mental evaluation of the defendant. There is nothing in the record to support any diagnoses of post traumatic stress syndrome or any other mental defect. Throughout the course of this case, the defendant has continued as an attorney representing defendants charged with various offenses in tribal court. She did this the day before her trial. The claim that she is able to act in a competent manner when dealing with the problems of others but is unable to act in a competent manner to assist in her own defense is simply that– a claim. It is unsupported by any medical or other competent evidence. I observed the defendant interacting with her attorney during the course of the jury trial. She was taking copious notes. One week prior to trial, she drafted a witness statement for Georgeanne Dupris to sign. She was clearly not incompetent to assist in her defense. In addition, there is no claim that others involved with the defendant are incompetent. It would have been a simple matter to employ an investigator or friend of the defendant (and she claims to have many on the reservation) to search her mobile home for the proof that she claims she has. Will such a search now be conducted before sentencing?

In examining a jury verdict on a claim of insufficient evidence, the question is whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government. United States v. Vockel, 320 F.3d 818 (8th Cir. 2003). Viewing the evidence in the light most favorable to the verdicts, a reasonable juror could have returned verdicts for the non-moving party. Here, the evidence was not only sufficient. It was overwhelming. The motion for judgment of acquittal should be denied.

New trial grants based upon objections as to the weight of the evidence are not favored. United States v. Dodd, 391 F.3d 930, 934 (8th Cir. 2004). The authority of the district court to grant a new trial should be exercised "sparingly and with caution." United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980). It is true that, in considering a motion for a new trial, the court "need not view the evidence in the light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses." United States v. Lacey, 219 F.3d 779, 783-84 (8th Cir. 2000). *See also* United States v. Ramirez, 362 F.3d 521, 525 (8th Cir. 2004). Looking at the motion in such a light, I conclude that the government's

evidence was very strong. I find the government witnesses to have been credible. The defendant's evidence was very weak and I find that the credibility of the witnesses for the defendant was very weak. We know that the government is permitted to and often does actually prove the criminal intent of a defendant with circumstantial evidence. See United States v. Idriss, 436 F.3d 946, 950 (8th Cir. 2006). Any direct evidence of a defendant's mental state is frequently not available. United States v. Londondio, 420 F.3d 777, 786 (8th Cir. 2005). The jury "is entitled to scrutinize and make reasonable inferences from defendant's conduct and from all facts surrounding the incident in question." United States v. Pitts, 508 F.2d 1237, 1240 (8th Cir. 1974).

The motion for a new trial should be denied.

The defendant had a fair trial and the interests of justice do not require, much less permit, either a judgment of acquittal or a new trial.

Now, therefore,

IT IS ORDERED that the motion for judgment of acquittal or motion for new trial (Doc. 72) is denied.

Dated this 10th day of October, 2006.

BY THE COURT:

_____
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY _____
              DEPUTY
(SEAL)